IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

JUSTIN CORNELL,
Plaintiff,

v.

Civil No. 3:23cv489 (DJN)

MS. JONES, *et al.*,
Defendants.

**MEMORANDUM OPINION**

Justin Cornell, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this civil rights action under 42 U.S.C. §§ 1983[1] and 1985.[2] The matter comes before the Court on the

---

1 Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

2 Although Cornell does not specify which subsection of § 1985 supports his claim, only subsection (3) could possibly apply, because Cornell does not allege that any person prevented an officer from performing duties, 42 U.S.C. § 1985(1), or that obstruction of justice, intimidation of a party, witness, or juror occurred. 42 U.S.C. § 1985(2). Therefore, the Court will look to subsection (3), which provides:

> If two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person . . . of the equal protection of the laws, or of equal privileges and immunities under the laws . . . [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is . . . deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such . . . deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

Particularized Complaint that Cornell filed on April 22, 2024, (ECF No. 19), and the Motion for Summary Judgment filed by Defendants Jones, Macklin, Royal, Green, Tatum, and Wyche (collectively, "Remaining Defendants") (ECF No. 71).[3] The Court provided Cornell with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF No. 74.) Cornell filed an Opposition to the Motion for Summary Judgment with an accompanying memorandum of law. ("Response," ECF Nos. 83, 84.) The Remaining Defendants filed a Reply in Support of Motion for Summary Judgment. ("Reply," ECF No. 85.)[4] For the reasons stated below, the Motion for Summary Judgment will be GRANTED.

## I. SUMMARY OF CLAIMS AND ALLEGATIONS

Cornell was incarcerated at the Lawrenceville Correctional Center ("LVCC") between June 2019 and August 2024. (ECF No. 5 ¶¶ 2, 5; ECF No. 84 at 4.)[5] Gladys Jones was LVCC's assistant librarian. (ECF No. 75.) Sakisha Macklin was LVCC's transition case manager. (ECF

---

3 By Memorandum Order entered on May 16, 2025, the Court granted Defendant Global Experts & Outsourcing, Inc.'s motion to dismiss and dismissed all claims against it without prejudice. (ECF No. 62.) By Memorandum Order entered on June 30, 2025, the Court dismissed all claims against Defendants Robinson, Puryear and Clements without prejudice, because Cornell failed to effect service on them in a timely manner. (ECF No. 64.)

The Remaining Defendants argue that claims against them arising after Cornell filed his original complaint on August 3, 2023, are not properly before the Court, because it did not grant him leave to amend his original complaint to include the later claims. (ECF No. 72 at 3, 25.) By Memorandum Order entered on February 12, 2024, however, the Court directed Cornell to file a particularized complaint. Pursuant to that Memorandum Order, the Particularized Complaint supplanted Cornell's original complaint and "stand[s] or fall[s] of its own accord." (ECF No. 13 at 2.) Thus, Cornell's claims are properly before the Court.

4 Cornell filed a sur-reply (ECF No. 86) without leave of Court, *see* E.D. Va. Local Civ. R. 7(F)(1) (requiring leave of Court before "further briefs or written communications may be filed" after a reply brief), but it does not amplify his Response. The sur-reply is not signed under oath or penalty of perjury and includes no evidence.

5 The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, spelling and punctuation and omits the emphasis, underlining and citations to exhibits in quotations from Cornell's submissions.

No. 72-16.) Marty Royal and Terrence Wyche were LVCC's acting principals. (ECF Nos. 72-12, 72-13.) Andrea Green was LVCC's institutional grievance coordinator. (ECF No. 72-17.) Esker Tatum was LVCC's facility administrator. (ECF No. 72-15.)

In his Particularized Complaint, Cornell raises the following claims for relief against the Remaining Defendants:[6]

Claim One: Jones denied Cornell access to the LVCC law library on June 19 and July 6, 2023. (ECF No. 19 at 7–8.)

Claim Two: Macklin relocated Cornell to a different housing building on January 9, 2024, denied Cornell's request to take his legal materials, and thereafter "confiscated, destroyed or withheld" the legal materials. (*Id.* at 9–10.)

Claim Four: Royal denied Cornell's written complaints about the June 19 and July 6, 2023 incidents (the subject of Claim One) and denied Cornell's request on July 3, 2023, to further discuss law library access. (*Id.* at 12.)

Claim Five: Green denied or mishandled five of Cornell's Written Complaints. (*Id.* at 13.)

Claim Seven: Tatum ordered Cornell's relocation and denial of Cornell's legal materials (the subject of Claim Two) and was responsible for Jones's denial of law library access (the subject of Claims One and Four). (*Id.* at 15).

Claim Nine: Wyche effectively denied Cornell access to the law library on October 10, 2023. (*Id.* at 17).

Claim Ten: The Remaining Defendants conspired to interfere with "Cornell's civil right to equal protection under the law . . . on the basis of his race" in violation of 42 U.S.C. § 1985. (*Id.* at 18, 34–37).

Cornell seeks monetary damages and injunctive relief. (ECF No. 19 at 38–39.) The Remaining Defendants argue that Cornell failed to exhaust his administrative remedies with respect to these claims. (ECF No. 72 at 24–25.)

---

[6] Claims Three, Six, and Eight (ECF No. 19 at 11, 14, 16) pertain only to dismissed defendants and the Court does not consider them. Elements of Claim Ten (ECF No. 19 at 18, 34–37) also pertain to dismissed defendants, so the Court considers Claim Ten only insofar as it applies to the Remaining Defendants.

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must consider the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in that party's favor." *Mitchell v. Rice*, 954 F.2d 187, 190 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Similarly, "conclusory allegations or denials, without more, are insufficient to preclude granting [a] summary judgment motion." *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020) (citing *Strickler v. Waters*, 989 F.2d 1375, 1383 (4th Cir. 1993)). Additionally, the nonmovant must identify what parts of the record support his argument that facts remain in dispute. "Rule 56 does not impose upon the district court a duty to sift through

the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

The Remaining Defendants ask the Court to award them summary judgment, because Cornell failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies constitutes an affirmative defense, the Remaining Defendants bear the burden of proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). In support of their Motion for Summary Judgment, the Remaining Defendants submitted exhibits including (1) sworn declarations by each of the Remaining Defendants (ECF Nos. 72-12, 72-13, 72-15, 72-16, 72-17, 75); (2) a copy of Virginia Department of Corrections ("VDOC") Operating Procedure 866.1, Offender Grievance Procedure ("Operating Procedure § 866.1," ECF No. 72-18); (3) a VDOC log listing all of Cornell's grievances between October 2017 and January 2025 ("Grievance Log," ECF No. 72-19); and (4) the initial response to Cornell's Regular Grievance LVCC-23-REG-00057 (ECF No. 72-21). The Remaining Defendants contend that the record establishes that Cornell did not exhaust his administrative remedies for any of his present claims. (ECF No. 72 at 14, 23–24.) To the contrary, the Remaining Defendants continue, Cornell has only once completed the grievance procedure through a full appeal — specifically, in Regular Grievance LVCC-24-REG-00049, which Cornell did not file until May 14, 2024, and which is not the subject of any of his present claims. (*Id.*; ECF No. 72-19 at 6–7.)

As a general rule, a nonmovant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. And "[o]nce a defendant

presents evidence of a failure to exhaust," as the Remaining Defendants have, "the burden of proof shifts to the plaintiff to show, by a preponderance of the evidence, that exhaustion occurred or administrative remedies were unavailable through no fault of the plaintiff." *Duran v. Hoover*, No. 3:19-CV-930-HEH, 2022 WL 15523076, at *2 (E.D. Va. Oct. 27, 2022) (quoting *Lordmaster v. Augusta Corr. Ctr. Pers.*, No. 7:13-CV-00506, 2014 WL 3359389, at *1, n.2 (W.D. Va. July 9, 2014)). Although Cornell contends in his Response that he fully exhausted his administrative remedies or that the Remaining Defendants obstructed his ability to do so (ECF No. 84 at 12–14, 18–19), he failed to cite to or provide any evidence to support his contentions.[7] His conclusory allegations or denials are insufficient. *Wai Man Tom*, 980 F.3d at 1037. Cornell's failure to respond to the Remaining Defendants' Motion for Summary Judgment with supporting evidence permits the Court to rely on the Remaining Defendants' submissions in deciding the Motion for Summary Judgment. *See Forsyth*, 19 F.3d at 1537.

In light of the foregoing submissions and principles, the following facts are established for the Motion for Summary Judgment. All permissible inferences are drawn in favor of Cornell.

---

[7] The Court previously warned Cornell:

> [T]he Court will not consider as evidence in opposition to any motion for summary judgment a memorandum of law that is sworn to under penalty of perjury. Rather, any verified allegations must be set forth in a separate document titled "Affidavit" or "Sworn Statement," and reflect that the sworn statements of fact are made on personal knowledge and that the affiant is competent to testify on the matters stated therein. *See* Fed. R. Civ. P. 56(c)(4).

(ECF No. 24 at 2.) Accompanying the Motion for Summary Judgment was also a notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) that again provided Cornell with a similar warning about the manner in which he filed any response. (ECF No. 74 at 1–2.) Cornell failed to comply with these directives. Nevertheless, Cornell included exhibits with his Response that the Court has considered, but, as discussed below, none of them show that he exhausted his administrative remedies or that such remedies were unavailable.

## III. UNDISPUTED FACTS RELATED TO EXHAUSTION

### A. Operating Procedure § 866.1

Operating Procedure § 866.1 requires that "[a]n offender must exhaust all the requirements of the [grievance procedure] before the offender can seek judicial relief," Operating Procedure at § 866.1.V.A, and "[t]he exhaustion requirement is met only when a Regular Grievance has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." *Id.* at § 866.1.V.B (italics omitted). Before submitting a Regular Grievance, an inmate must demonstrate that he or she attempted to resolve the issue through the informal complaint process. *See id.* at §§ 866.1.I.D.1–4, 866.1.II. "The first step in the informal complaint process is for the offender to discuss their issue with staff for a quick resolution." *Id.* at § 866.1.I.D.1. If the issue is not resolved verbally, the offender should submit a Written Complaint. *Id.* at § 866.1.I.D.2. "The Written Complaint must be received by designated staff within 15 days of the original incident or discovery of the incident." *Id.* at § 866.1.I.D.2 (italics omitted). "The Institutional Ombudsman or other designated staff member must accept all Written Complaints . . . for consideration unless the inmate is limited." *Id.* at § 866.1.II.B.2 (italics omitted).

Prison staff have fifteen days from receipt of the Written Complaint to provide an appropriate written response. *Id.* at § 866.1.II.B.4. "If the issue on the Written Complaint is not resolved to the satisfaction of the inmate, or staff fail to provide a written response within 15 days, the inmate may file a Regular Grievance . . . . The Regular Grievance must be placed in the Grievance Mailbox within 30 days of the original incident or discovery of the incident unless a more restrictive timeframe applies." *Id.* at § 866.1.I.D.4 (italics omitted). The offender must attach any required documentation demonstrating that he attempted to resolve the issue through

the Informal Complaint process; therefore, the offender must submit a copy of his Written Complaint or other supporting documentation with his Regular Grievance. *Id.* at § 866.1.III.B.6 (italics omitted).

**1. Grievance Intake Procedure**

Before reviewing the substance of a grievance, prison officials conduct an intake review to assure that it meets the published criteria for acceptance. *Id.* at § 866.1.III.C.3–4. "If the Regular Grievance does not meet the intake criteria, staff has two working days from receipt to complete the Intake section of the Regular Grievance [form], indicating the reason for rejection, and to return the Regular Grievance to the offender." *Id.* at § 866.1.III.C.5 (italics omitted). "If the offender disagrees with the intake decision, the offender has five days to appeal the decision." *Id.* at § 866.1.III.C.6. "There is no further review or appeal of an intake decision following a Regional Ombudsman disposition." *Id.* at § 866.1.IV.D.1.d.

**2. Grievance Review**

If the Regular Grievance is accepted, within two working days, prison "staff must print and provide [a] Grievance Receipt to the offender as notification of acceptance." *Id.* at § 866.1.III.C.4 (italics omitted). Once the Regular Grievance is accepted for review, the Institutional Ombudsperson determines the proper course of investigation. *Id.* at § 866.1.III.D.1. "Within 30 days of issuance of the Grievance Receipt, each accepted grievance must be investigated, reviewed, completed, and the Offender Grievance Response – Level I returned to the inmate unless a continuance is authorized." *Id.* at § 866.1.III.F.2.b (italics omitted). "If the Offender Grievance Response – Level I is not returned to the inmate within 30 days and an authorized continuance was not issued, the inmate can appeal to the Regional Ombudsman in writing, including copies of the grievance receipt and other supporting documentation." *Id.* at

§ 866.1.III.F.2.b.i (italics omitted). Rather than appealing, however, the inmate may instead "contact the Institutional Ombudsman to ascertain the status of the grievance response and await disposition." *Id.* at § 866.1.III.F.2.b.ii.

### 3. Grievance Appeals

"The Offender Grievance Response – Level I includes a section for the offender to appeal their grievance response." *Id.* at § 866.1.IV.A (italics omitted). "The offender must submit their appeal within five days of receiving [the] response to the staff member designated on the Offender Grievance Response – Level I." *Id.* at § 866.1.IV.B.2 (italics omitted). Depending on the issue in the grievance, the appeal is addressed by the Director of Offender Management Services, the Health Services Director, the Superintendent for Education, the Chief of Corrections Operations, or the Regional Administrator. *Id.* at § 866.1.IV.C.1.a–e. "[S]taff must complete the appeal and provide a response to the inmate within 20 days after receipt of the appeal," unless "continued for a maximum of up to 30 days beyond the 20-day time limit . . . ." *Id.* at § 866.1.IV.C.2.a. "If the Offender Grievance Response – Level II is not returned to the inmate" within these constraints, "the inmate may then seek judicial relief." *Id.* at § 866.1.IV.C.2.b (italics omitted). Rather than appealing, however, the inmate may instead "contact the Institutional Ombudsman to ascertain the status of the grievance response and await disposition." *Id.* at § 866.1.IV.C.2.c. An unsatisfactory or untimely Offender Grievance Response – Level II exhausts the inmate's administrative remedies and permits him to seek judicial review. *Id.* at § 866.1.IV.C.2.b; *id.* at § 866.1.V.

## B. Relevant Grievance Materials

The Grievance Log reflects that Cornell used the grievance procedure 155 times while incarcerated at LVCC. (ECF No. 72-19 at 5–48.) Cornell filed only six Regular Grievances.

(*Id.* at 6–7, 9–10, 15–16, 30–31, 35–36, 45–46.) The only Regular Grievance appealed to a Regular Grievance Response – Level II is LVCC-24-REG-00049. (*Id.* at 6–7.) This Regular Grievance followed a decision about Written Complaint LVCC-24-WRI-00677, which Cornell submitted on April 1, 2024, asserting that Wyche "failed to staff the law library" on March 27, 2024. (ECF No. 72-19 at 6–7.) This March 2024 incident is not the subject of Cornell's present claims.

### 1. Grievance Materials Related to Claims One and Four

In Claim One, Cornell alleges that Jones denied him access to the LVCC law library on June 19, 2023, and July 6, 2023. In Claim Four, Cornell asserts that Royal denied his written complaints about these incidents and that Royal denied Cornell's request on July 3, 2023, to further discuss law library access. (ECF No. 19 at 7–8, 12.)

Cornell submitted Written Complaint LVCC-23-INF-00995 on June 23, 2023, asserting that "[t]he Law Library denied me access to work on my writ of mandamus reply" on June 19, 2023. (ECF No. 19-16; ECF No. 72-19 at 18.) Royal responded that Cornell was "not denied access to the law library. I have a copy of all the days you were assign[ed] to go[,] all the way back to May." (ECF No. 19-16; ECF No. 72-19 at 18.) The record includes no evidence that Cornell submitted a Regular Grievance about this incident and the Grievance Log does not show any filed within the 30-day period afterward as Operating Procedure § 866.1 requires. (ECF No. 72-19 at 17–18).

Cornell submitted Written Complaint LVCC-23-INF-01073 on July 10, 2023, asserting that "Jones closed the Law Library on July 6, 2023 in the afternoon and denied him entrance after Capt. Hayes was letting him in." (ECF No. 72-19 at 18.) Royal responded that "the institution was on lockdown due to [a] power outage at the facility" on July 6, 2023. (*Id.*)

Cornell has provided Regular Grievance LVCC-23-REG-00057 as evidence that he further pursued the denial of his Written Complaint. (*See* ECF No. 19-10.) The Regular Grievance was received on August 1, 2023. (*See id.*) Cornell's exhibit shows that Green rejected the Regular Grievance at intake that same day, marking that Cornell had failed to "identify how the issue caused personal harm or loss to you, personally." (*Id.* at 2.) Green's decision was overturned by the Regional Ombudsman on August 17, 2023, and the Regular Grievance was "returned to the Facility Unit Head for response." (*Id.*)

The Grievance Log reflects that staff thereafter investigated this Regular Grievance and completed an Offender Grievance Response – Level I ("Level I Response"). (ECF No. 72-19 at 15–16.) The investigation "reveal[ed] that . . . Captain Hayes . . . state[d] that at no time was he going to let you in the law library because it was in lockdown because of the power outage." (*Id.* at 16.) The Level I Response opined that "Jones had a legitimate reason for having the law library closed and was informed by [the] Chief of Security not to allow anyone in due to the lockdown because of the power outage. Your grievance is governed by Operating Procedures 410.3 Inmate and CCAP Probationer / Parolee Movement Control." (*Id.*) The Level I Response concluded that "[a]fter thoroughly reviewing the information provided by staff in response to your complaint and the policy governing the issue, I find your grievance to be unfounded." (*Id.* (capitalization omitted).)

The record includes no evidence that Cornell appealed the Level I Response. (ECF No. 72-19 at 15–16.) Instead, Cornell argues in his Response that he "filed a Level II appeal" when he appealed Green's *intake decision* to the Regional Ombudsman. (ECF No. 84 at 11–14.) Operating Procedure § 866.1, however, shows that an appeal from an intake decision is not a Level II appeal. Level II appeals are conducted by the Director of Offender Management

Services, the Health Services Director, the Superintendent for Education, the Chief of Corrections Operations, or the Regional Administrator, not the Regional Ombudsman. Operating Procedure at § 866.1.IV.C.1.a–e.

Moreover, Cornell also contends that the Regional Ombudsman had 20 days to review and respond to his appeal of Green's intake decision. (ECF No. 84 at 13.) But the Regional Ombudsman has 30 days, not 20, to respond to an appeal from an intake decision. Operating Procedure at § 866.1.IV.D.2.b. Instead, the official conducting a Level II appeal has 20 days to complete the review and respond, unless the appeal is continued. *Id.* at § 866.1.IV.C.2. Cornell's mistaken attribution of the 20-day Level II appeal response deadline to the Regional Ombudsman's decision overturning Green's intake decision further illustrates that he has conflated the intake appeal process with a Level II appeal. (ECF No. 84 at 13; ECF No. 84-1 at 23–24.) An intake appeal is not a Level II appeal and does not exhaust the administrative remedies available under Operating Procedure § 866.1. Operating Procedure at § 866.1.I.D.9; *id.* at § 866.1.V.

Cornell submitted an Inmate Request form on July 3, 2023, seeking an appointment with Royal "to discuss the issue I'm having with getting time in the law library. If possible, I would prefer a face-to-face meeting." (ECF No. 19-17.) Royal responded that "I don't have time to meet with you face to face. I have more things to address than that. I have already answered your questions." (*Id.*) The record includes no evidence that Cornell submitted even a Written Complaint about this incident, let alone a Regular Grievance. (*See* ECF No. 72-19 at 17–18.) Rather, Cornell refers only to Written Complaint LVCC-23-INF-00995, Written Complaint LVCC-23-01073 and Regular Grievance LVCC-23-REG-00057, discussed above. (ECF No. 19 at 12.)

Thus, the record shows that Cornell did not complete a Level II appeal for the incidents from which Claims One and Four arise.

### 2. Grievance Materials Related to Claim Two

In Claim Two, Cornell alleges that Macklin prevented him from taking his legal materials to his new housing assignment and later "confiscated, destroyed or withheld" them. (ECF No. 19 at 9–10.) Cornell submitted Written Complaint LVCC-24-WRI-00267 on February 1, 2024, asserting that when he attempted to retrieve his legal materials on January 23, 2024, "Macklin asked me to 'come back' at 0900 (hrs)" on January 24, 2024. (ECF No. 84-1 at 22.) Macklin was not there at that time, Cornell continued, and no one was "assign[ed] . . . to cover her desk." (*Id.*) "Sgt. Walker told me to try again" on January 25, 2024, Cornell wrote, but Macklin "again did not show up" and no one "cover[ed] her desk." (*Id.*) Macklin responded that Cornell was "given a directive from the staff in the gym that you had excessive property that you couldn't have in your cell. You selected what you wanted to ship out. I requested for you to sign the paperwork to ship it out through your Unit Manager." (*Id.*) Macklin also wrote that "[m]y desk is not a mandatory desk to be covered in my absence." (*Id.*) The record includes no evidence that Cornell submitted a Regular Grievance about this incident and the Grievance Log does not show any filed within the 30-day period afterward as Operating Procedure § 866.1 requires. (ECF No. 72-19 at 9–14.)

Cornell submitted Written Complaint LVCC-24-WRI-00310 on February 7, 2024, asserting that Macklin "denied me access to . . . my legal mail" on January 29, 2024.[8] (ECF

---

8 Cornell also submitted Written Complaint LVCC-24-WRI-00309 on February 7, 2024, asserting that "Robinson denied me access to my legal mail" on January 29, 2024. (ECF No. 19-15.) As noted above, however, all claims against Robinson were dismissed without prejudice for lack of service. (ECF No. 64.)

No. 19-11.) Robinson, not Macklin, responded that Cornell was "given the same opportunity as the other inmates to go through your property and decide what you wanted to take with you to the [new] building. All staff were given instructions on how to distribute property to the inmates per Administration." (*Id.*)

The record includes the first page of a Regular Grievance form addressing this incident, which Cornell apparently signed on February 17, 2024, (ECF No. 84-1 at 32), but it is not shown on the Grievance Log.[9] The partial Regular Grievance form bears only the Written Complaint log number (*i.e.*, LVCC-24-WRI-00310), lacks an assigned Regular Grievance log number, and is stamped as received only by the Regional Ombudsman, not by LVCC. (ECF No. 84-1 at 32.) Because the exhibit omits the second page of the Regular Grievance form, there is no indication whether the Regular Grievance was accepted or rejected at intake, that any rejection was appealed, or the outcome of such an appeal. Thus, there are no signs that Cornell ever submitted this Regular Grievance to LVCC as required by Operating Procedure § 866.1 or that Cornell appealed from an unsatisfactory or untimely response to the Regular Grievance if he submitted it.

Thus, the Court finds that the record shows that Cornell did not complete a Level II appeal for the incidents from which Claim Two arises.

### 3. Grievance Materials Related to Claim Five

In Claim Five, Cornell alleges that Green denied or mishandled five of his Written Complaints. First, he asserts that Green denied his "July 6, [2023] complaint" and that the Regional Ombudsman overturned her decision. (ECF No. 19 ¶¶ 39–40.) This refers to Green's

---

9 The Grievance Log lists only one Regular Grievance within the 30-day period after the incident, but it arises from an alleged denial of health records outside of the scope of this claim. (ECF No. 72-19 at 9–14.)

rejection of Cornell's Regular Grievance LVCC-236-REG-00057 at intake, discussed above, which was returned by the Regional Ombudsman and investigated by staff, resulting in a Level I Response that Cornell did not further appeal. (ECF No. 19-10; ECF No. 72-19 at 15–16.)

Second, Cornell alleges that Green did not respond to another Written Complaint that he signed July 15, 2023, in which he wrote that "the Law Library provided me inadequate access" on July 10 through 14, 2023. (ECF No. 19 ¶ 41; ECF No. 19-19.) This Written Complaint is stamped as received by LVCC on September 9, 2023, but it does not bear a log number and no corresponding entry appears on the Grievance Log between July 15 and September 9, 2023. (ECF No. 19-19; ECF No. 72-19 at 16–17.) Instead, it bears a handwritten notation that "[t]his is a copy and has not been processed." (ECF No. 19-19.) In her sworn declaration, Green denied receiving this Written Complaint. (ECF No. 72-17 ¶ 7.)

Cornell contends that he submitted a Regular Grievance when he failed to receive a response to this Written Complaint within 15 days after he submitted it, (ECF No. 19 ¶ 41), but the record includes no evidence that he did so. The Written Complaint is stamped as received by the Regional Ombudsman on September 21, 2023, (ECF No. 19-19), but Cornell has not cited to or provided a Regular Grievance form to support his assertion, and the Grievance Log does not list any such Regular Grievance within the 30-day period after the incident, as Operating Procedure § 866.1 requires.[10] (ECF No. 72-19 at 17.)

---

[10] The record includes a letter Cornell wrote to the Regional Ombudsman on September 16, 2023, stating that he submitted a Regular Grievance about this incident but that Green rejected it. (ECF No. 84-1 at 36.) The letter is also stamped as received by the Regional Ombudsman on September 21, 2023. (*Id.*) But it is not accompanied by a Regular Grievance form pertaining to this incident. Rather, Cornell asserts that the letter pertains to Written Complaint LVCC-24-WRI-01424. (ECF No. 84 at 12.) He did not submit LVCC-24-WRI-01424 until August 2, 2024, almost a year after the letter. (ECF No. 84-1 at 37; ECF No. 72-19 at 6.)

Third, Cornell submitted Written Complaint LVCC-24-WRI-00644 on March 25, 2024, asserting that he "was denied access to the courts through the Law Library without a legitimate penological interest" on March 18, 2024. (ECF No. 19-20.) Cornell claims that he directed this Written Complaint to Tatum, but that "Green routed [it] to Jones," who "had no control nor power over this denial." (ECF No. 19 ¶ 42.) Jones responded that "[t]he library was closed on 03-18-2024 per security." (ECF No. 19-20.)

Although Operating Procedure § 866.1 requires an inmate to "address[]" a Written Complaint to "institutional staff or an institutional department," it does not require the Institutional Ombudsman to direct a Written Complaint to the staff member addressed by the inmate. Operating Procedure at § 866.1.II.B.1.c Rather, "the Institutional Ombudsman determines the course of investigation," *id.* at § 866.1.III.D.1, and "an appropriate staff member should . . . respond to the offender's complaint." *Id.* at § 866.1.II.B.3. In any event, the record includes no evidence that Cornell submitted a Regular Grievance about Green's routing or Jones's response, and the Grievance Log does not list any submitted within the 30-day period after the incident as Operating Procedure § 866.1 requires. (ECF No. 72-19 at 6–8.)

Fourth, Cornell submitted Written Complaint LVCC-24-WRI-00077 on January 11, 2024, asserting that Medical Records denied his January 8, 2024 request for a copy of a log of released medical records. (ECF No. 72-19 at 14.) "S. Richardson" responded that "in order for your medical records to be sent out you have to come to the medical department and sign a release . . . . We do not keep a log of these request[s]. . . . If you have not signed a release, no medical records have been sent." (*Id.*) Cornell contends that Green rejected a Regular Grievance that he submitted relating to this incident, "claim[ing] that 'the issue I submitted on the grievance is not the same as the issue I submitted on the Written Complaint.'" (ECF No. 19

¶ 43.) Cornell further asserts that Green's intake decision was overturned by the Regional Ombudsman. (*Id.*). In her sworn declaration, Green did "not recall specifically being involved" with this Regular Grievance but denied "frustrat[ing] [Cornell's] administrative remedies." (ECF No. 72-17.)

The record includes the first page of a Regular Grievance form addressing this incident, in which Cornell alleged that he had not received a response to the Written Complaint within the required 15 days. (ECF No. 19-21.) Cornell noted on that partial Regular Grievance form that the 15-day period for a response elapsed on January 26, 2024. (*Id.*). But Cornell signed the Regular Grievance form on January 25, 2024, before the 15-day period ended. (*Id.*) Moreover, because the exhibit omits the second page of the Regular Grievance form, there is no indication of Green's intake decision or any appeal to or decision by the Regional Ombudsman. (*Id.*).

Finally, Cornell submitted Written Complaint LVCC-24-WRI-00264 on February 1, 2024, asserting that Green failed to issue a receipt for Written Complaint LVCC-24-WRI-00077. (ECF No. 72-19 at 12.) Green responded that "[a]ll receipts are put in the unit manager box. . . . If I do not put them in the outgoing mail, I have no control of them once they leave my office but all receipts have been sent." (*Id.*) The record includes no evidence that Cornell submitted a Regular Grievance about this incident and the Grievance Log does not show any filed within the 30-day period afterward as Operating Procedure § 866.1 requires. (ECF No. 72-19 at 10–14).

Thus, the record shows that Cornell did not complete a Level II appeal for the incidents from which Claim Five arises.

#### 4. Grievance Materials Related to Claim Nine

In Claim Nine, Cornell alleges that Wyche effectively denied him access to the law library on October 10, 2023, because Wyche did not release him until 3:00 p.m. and the library

closed at 3:30 p.m. (ECF No. 19 ¶ 54.) Cornell submitted Written Complaint LVCC-23-INF-01661 about this incident on October 17, 2023. (ECF No. 19-26.) "M. Clements," LVCC's librarian, responded that Cornell's housing building "was on lock[down,] so it was a little harder to get everyone to the library as those scheduled did not receive passes until later in the week. . . . I never denied Cornell access to the library. As soon as he arrived[,] he was admitted into the library." (*Id.*) The record includes no evidence that Cornell submitted a Regular Grievance about this incident and the Grievance Log does not show any filed within the 30-day period afterward as Operating Procedure § 866.1 requires. (ECF No. 72-19 at 14–15.)

Thus, the record shows that Cornell did not complete a Level II appeal for the incidents from which Claim Nine arises.

**5. Grievance Materials Related to Claim Seven**

In Claim Seven, Cornell alleges that as facility administrator, Tatum "bears ultimately responsibility" for each of the previous claims. (ECF No. 19 ¶¶ 47–50.) The record includes no evidence that Cornell submitted a Regular Grievance directed specifically to Tatum's alleged conduct. Instead, Cornell refers only to the incidents discussed above. (*Id.*; ECF No. 84 at 12–13.)

Thus, the record shows that Cornell did not complete a Level II appeal for the incidents from which Claim Seven arises.

**6. Grievance Materials Related to Claim Ten**

In Claim Ten, Cornell alleges that the Remaining Defendants conspired to interfere with "Cornell's civil right to equal protection under the law . . . on the basis of his race" in violation of 42 U.S.C. § 1985. (ECF No. 19 at 18, 34–37.) Cornell alleges the Remaining Defendants acted in furtherance of the conspiracy when Jones closed the library on July 6, 2023; Jones,

Royal, Green and Tatum asserted that the library was on lockdown that day; Royal refused a face-to-face meeting with Cornell about library access; Macklin and Tatum refused to release Cornell's legal material; and Tatum and Wyche collaborated to deny Written Complaint LVCC-23-INF-01661 concerning the October 10, 2023 library closure. (*Id.* at ¶¶ 58, 111–12, 114–18.) As discussed above, the record shows that Cornell did not complete a Level II appeal for any of these incidents. Nothing in the record reflects that Cornell submitted any other Written Complaints or Regular Grievances independently raising his allegation that the Remaining Defendants conspired against him.

## IV. EXHAUSTION ANALYSIS

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The Supreme Court's decision in *Porter v. Nussle,* 534 U.S. 516 (2002), made clear that the scope of [this] exhaustion requirement includes 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Khan v. United States*, 271 F. Supp. 2d 409, 414 (E.D.N.Y. 2003) (emphasis omitted) (quoting *Porter*, 534 U.S. at 532). Thus, the exhaustion requirement applies to "Sections 1985, 1986, [and] federal tort and *Bivens* claims brought by a prisoner." *Id.*

The statute's language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance

through all available levels of appeal, before bringing his or her action to court. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The United States Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "so that the agency addresses the issues on the merits." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter*, 534 U.S. at 524.

The record establishes that Cornell failed to appeal a Regular Grievance to an Offender Grievance Response – Level II for any of the incidents from which his claims arise. Thus, Cornell failed to exhaust his administrative remedies with respect to all of his claims. To the extent that Cornell argues that Green's behavior rendered the administrative remedies in Operating Procedure § 866.1 unavailable,[11] "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). The Supreme Court has explained that an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end — with officers unable or consistently unwilling to provide any

---

[11] Cornell's Response includes a fleeting and unsubstantiated allegation that "Green conspired with the other defendants to obstruct [his] exhaustion." (ECF No. 84 at 18–19.) Cornell contradicts himself, however, by claiming elsewhere in the Response that although "Green *attempted* to frustrate [the grievance] process by denying receipt of [Cornell's Written] Complaints," Cornell "moved on to the Regular Grievance step in accordance with policy." (*Id.* at 14 (emphasis added).) "When [he] received a response, he appealed to the Region[al] Ombudsman." (*Id.*)

relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643–44 (2016). Cornell has not established any of these three circumstances.

First, nothing in the record reflects that Operating Procedure § 866.1 is a "dead end — with officers unable or consistently unwilling to provide any relief." *Ross*, 578 U.S. at 643. Cornell submitted 155 grievances in one form or another during the five years that he was incarcerated at LVCC. (ECF No. 72-19 at 5–48.) Despite his ability to challenge unsatisfactory outcomes from Written Complaints with a Regular Grievance, he chose to do so only six times. (*Id.* at 6–7, 9–10, 15–16, 30–31, 35–36, 45–46.)

Second, Cornell fails to demonstrate that Operating Procedure § 866.1 "is so opaque that it becomes, practically speaking, incapable of use." *Ross*, 578 U.S. at 643. The process for submitting Written Complaints and Regular Grievances and for appealing adverse intake decisions or Level I response are clear, and despite his mistake in conflating an appeal from a Regular Grievance intake decision with a Level II appeal, Cornell admitted in his Response that he could navigate it. (ECF No. 84 at 18–19.) He also properly concluded a full appeal through a Regular Grievance Response – Level II, although that Regular Grievance is unrelated to any of his present claims. (ECF No. 72-19 at 6–7.)

Finally, nothing in the record establishes that "prison administrators thwart inmates from taking advantage of a grievance process." *Ross*, 578 U.S. at 644. Although Cornell alleges that Green rejected or otherwise obstructed his attempts to exhaust the administrative remedies available under Operating Procedure § 866.1, he identifies only four Regular Grievances from which he claims to have appealed her intake decisions. The Court has considered all four in its

discussion of Claim Five above. In one, Regular Grievance LVCC-23-REG-00057, the Regional Ombudsman overturned Green's decision and the ensuing staff investigation resulted in an Offender Grievance Response – Level I that Cornell did not further appeal. In the other three, Cornell alleges that he submitted Regular Grievances following unsatisfactory outcomes from the undocumented July 15, 2023 Written Complaint, Written Complaint LVCC-24-WRI-00310, and LVCC-24-WRI-00077, but he has not cited to or provided complete Regular Grievance forms showing Green's intake decision or, if Cornell appealed, the Regional Ombudsman's determination. Notably, "[t]he Regional Ombudsman must maintain a copy of all Regular Grievances received that appeal [an] intake decision[,] with their determination to uphold or overturn" the intake decision, Operating Procedure at § 866.1.IV.D.1.c, but Cornell neither claims that he attempted to obtain the complete forms to substantiate his allegation that Green rejected them nor otherwise explains their omission from the record.

In sum, to the extent that Cornell argues that the administrative remedies detailed in Operating Procedure § 866.1 were unavailable, nothing in the record supports that argument. Accordingly, the Court finds that Cornell failed to exhaust his administrative remedies with respect to Claims One, Two, Four, Five, Seven, and Nine, and these claims will be DISMISSED WITH PREJUDICE.[12]

---

[12] Although the normal remedy for a failure to exhaust under § 1997e(a) is dismissal without prejudice, *see, e.g.*, *Booth*, 532 U.S. at 735, dismissal with prejudice may be appropriate "where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004); *see Van Houten v. Marlett*, 330 F. App'x 161, 162–63 (10th Cir. 2009). That is the case here, because the 30-day time limit for filing any relevant grievance has long since expired.

## V. CONCLUSION

The Remaining Defendants' Motion for Summary Judgment (ECF No. 71) will be GRANTED. Cornell's claims against them and the action as a whole will be DISMISSED WITH PREJUDICE.

An appropriate Order will accompany this Memorandum Opinion.

Let the Clerk file a copy of the Memorandum Opinion electronically and send a copy to Plaintiff and counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: August 26, 2026